1951 Narragansett Indian Tribe v. The Rhode Island Dept. of Transportation Thank you Mr. Devereaux Good morning Good morning, Your Honors I'm William Devereaux. I'm representing the Narragansett Indian Tribe with me is Patrick McBurney. I would ask for two minutes for rebuttal. You may As Your Honors understand from the briefing, this is an appeal that arises out of a programmatic agreement that was entered into pursuant to Section 106 of the National Historic Preservation Act and it was an agreement that was essentially carefully calibrated between the Southern Indian Tribe, the State of Rhode Island, and the Federal Government. Essentially this undertaking, as it's termed under the National Historic Preservation Act, concerns about 1290 feet of a bridge that extends Route 95 through Providence and right through the Historic Providence Cold Lands Archaeological District. Should we read the complaint as alleging that FHWA did anything in breach of the PA? Yes What is it that FHWA did that breached the PA? Well, what they did was they were the body that essentially technically terminated the PA. Federal Highway also under the statute owes a fiduciary obligation to Indian Tribes, which is kind of unique under the statute. Now you're talking about a non-contractual fiduciary. Yes And my question is what they did to breach the PA and you've said they terminated it. They terminated it. That's it? That's it. And couldn't they terminate it under paragraph, what is it, seven or eight? Nine No, under eight once there was a disagreement about a proposed amendment. It's our position that they could terminate it for cause. And essentially why, as I understand why the Federal Government terminated it, was because the State of Rhode Island, the parties essentially came to the table, agreed to the terms of the programmatic agreement. There isn't a single term in that agreement that can't be conformed to. Essentially what happened was after the agreement was entered into, and essentially when construction began, the State of Rhode Island, which had taken control of the three parcels of property that was supposed to be transferred at least two to the tribe, one was going to be jointly held. So you read paragraphs eight and nine in this meeting, even if one side proposes an amendment and they can't reach agreement on the amendment, you still can't terminate using the procedures of paragraph nine. You actually have to have some other cause. I submit that you have to terminate for a cause. Is a cause failure to agree on an amendment? I would submit that under the circumstances of this case, there isn't any term of the agreement that any party disagrees with. One related question. Let's assume that there is some breach by the FHWA of the PA somehow. Then don't you belong in the Court of Federal Claims? I would submit that it goes back to the— How do you bring a breach of contract action in U.S. District Court against the U.S. Government? I would submit to the court that looking at the section 307.105, which is the attorney fees provision, that's a very expansive provision. It says that attorneys' fees and costs to prevailing parties in any civil action brought in any U.S. District Court by any interested person. And if the person substantially prevails, then the court can award attorneys' fees, expert witness fees, and other costs. It doesn't tell you you therefore have a cause of action for this violation against the federal government. In fact, it doesn't say that you have a specific cause of action under the attorneys' fees provision. So it seems that you have two relatively express indications of how you could bring this challenge. You could say it's file agency action. You could challenge them under the APA. Or if you say they breached the contract, you could bring it in the Court of Federal Claims. I would submit that I wouldn't certainly foreclose those avenues. But what in the text of the language that you just read suggests, notwithstanding the rules that have been set up about where contract claims against the federal government have to be brought, that language suggests that you can bring it in a different federal district court. I don't see it. Well, I would submit to the court in this particular case, under these circumstances, you have a problematic agreement that was entered into with all the parties, and everyone's proceeding ahead in their lives. I understand. Maybe there's an argument about why you could sue a state party. I'm asking about the FHWA. It just seems there's nothing in that language that suggests, notwithstanding all the rules about where contract claims against the federal government have to be brought, you can bring it somewhere else. You'd think you'd want pretty express language before we assume that. And the language you say doesn't say anything about that. I certainly, in light of Sandoval, would like more specific language. But I would submit to the court that reading the expansive language of the attorney's fees provision, that certainly we have a right to bring a breach of contract action against the state if, I suppose, we could bifurcate it and file an action against the… What's your federal question there? As I understand it, the whole issue is, in the prior agreement, there's nothing in federal law that would have kept you from agreeing that you would sign on to what they want you to sign on to. Your claim is, hey, we've made an agreement. It doesn't require us to do that, and you're demanding us to do something new. That's a contract issue. The contract was entered into. Sure, the contract was entered into pursuant to federal law and pursuant to the 106 process because what happened here was, as they proceeded ahead with the 106 process, the state and the federal government said, this is definitely going to disturb historic property. To vote for you on the contract claim against the state, what federal question would we necessarily have to resolve? The federal question I submit is a cause of action for breach of contract pursuant to a problematic agreement under a federal statute with a sovereign Indian trust. I don't hear a question there. What federal question do we have to decide? I think it's the definition or the understanding of the federal statute, the section 106 process. Can I make sure I understand? There's two possible claims against the state you could be making. I'm not sure if you are separating them out, need to be bringing both, or there's only one. I can't tell. One possibility is you're saying there is an implied cause of action under this federal statute, and you're suing to enforce this federal statute whether or not the programmatic agreement is a contract as a matter of state law or any other law. The other possibility is even if there is no implied cause of action under this federal statute to enforce 106, separately you have a right to enforce a contract because there just was a contract between the parties. Those are different. Did you in your complaint identify which of the two you're bringing? I don't believe we specifically put that into the complaint. You couldn't get attorney's fees for the contract claim because you're not enforcing the statute. It's not an action under the statute. You're just enforcing an agreement. The implied cause of action that you keep talking about in the brief suggests you're not bringing a contract claim. You're bringing an implied cause of action under the statute to enforce the programmatic agreement 106. True. As to that, even if there might be an implied cause of action under the statute generally, what's the basis for concluding that we should read Congress to have implicitly created an enforceable right that could ground an implied cause of action under 106, given all the provisions in 106 that suggest this is the parties that are going to work it out and it can be terminated because you'd be frustrating that 106 process if you forced them to stay together even when the federal government wanted to terminate it. Well, in this particular case, and I think it is heavily fact-driven, all throughout the statute, the 106 process talks about the federal government not expending any money prior to working out an agreement to mitigate the damage to historic properties. Prior is used about five different times in the statute. In this case, what occurred is all the parties agreed, and then the state, after construction already began, the federal government already sent the money, half of the project is done. They plowed through the historic areas. They've constructed half of Route 95. But you're not suing them like in those other cases you carry, and the other ones where you're saying you just bypassed the 106 process entirely. That's not your claim. You're trying to hold them to the agreement. What's the basis for concluding that Congress created an enforceable right that you could bring to hold people to the agreement as implied cause of action? I just don't see what the argument is for that. You just are talking abstractly that there's an implied cause of action under the statute. Maybe there is for certain things like bypassing 106 altogether, but that's not enough to show there's implied cause of action to enforce 106. What they did in this case was they didn't bypass the 106 process. They went into the 106 process. But what most cases you cite for implied cause of action are cases in which the allegation was that they did bypass the 106 process. There's no authority to suggest there's implied cause of action to enforce a programmatic agreement under 106. I would say, yes, it's a case of first impression as far as that goes. There's such a whole claim here that, look, this 106 process was invoked. We got an agreement. We were going to do certain things. We give up certain rights, and at the end of it, they give us a deed, and they haven't given us the deed. Right. If they had just given you the deed, you wouldn't be here. If they had just given us the deed pursuant to the grant that was entered, we wouldn't be here. So the whole issue is are they obligated to give you the deed without insisting on these reciprocal covenants? Yes, that's essentially it. The bottom line is that we, instead of going through the 106 process, the parties agreed because it was going to cost too much money that they would enter into this programmatic agreement. But what happens when the programmatic agreement breaks down under the statute? I thought what happens is they lose the benefit of having said that they consulted. Well, if that's what it means, then the trial... Then if there actually was no consultation, in theory, if there's an implied cause of action, you could bring the kind of implied cause of action that was at issue in Vieux Carre and those other cases, but that's not your claim. You're not saying that's our recourse. You're saying even though we might have that recourse, we have an additional recourse, which is to hold them to the agreement. I don't see how you get that. I don't see there's even an argument in the brief as to why that would be true. Instead, you're just making arguments that there's an implied cause of action in general under the statute. But there could be with respect to bypassing the entire process, but I don't see what the argument is for there being an enforceable right that was designed to give you a right to hold people to the agreement under the statute. This whole contract was entered into pursuant to that 106 process, and the parties, and certainly my client, detrimentally relied upon those representations. Now the state's taken the position that, well, here are the three parcels, or here are the two parcels, but guess what, you now have to agree to affirmatively put into the deed that the laws of the state of Rhode Island, civil and criminal, apply to the land. Thank you, Judge. Thank you, I'm sorry. Good morning, may it please the court. Mariana Ormond on behalf of the state of Helles. The district court's decision should be affirmed for three reasons. First, the National Historic Preservation Act and the regulations governing the section 106 process do not provide for a private right of action, and at most identify the tribe as a consulting party. Secondly, the programmatic agreement is a creature of the federal regulations governing the section 106 process and was terminated by Federal Department of Transportation in accordance with those regulations. And does that not include a requirement for cause? The programmatic agreement did include, it did say that it was for cause, and in this circumstance, cause was met. What was the cause? The cause was that the parties could not reach an agreement. They reached an impasse, and pursuant to stipulation eight of the programmatic agreement, they were required to then consult to move past that impasse. So, according to strict contract law, you and I have a contract, and after we have agreed to all the terms, you want to bring up a new provision, and we don't agree on amending it, that's cause for terminating the original contract so that it was valid to begin with? Your Honor, this is a programmatic agreement. It's not a contract. It does not formulate the same way that a contract does. What is the difference between a programmatic agreement in which the parties negotiate, sign a document, and a contract? The programmatic agreement only exists within the 106 process, and it must follow that process. The programmatic agreement does not require offer, acceptance, or consideration, and it can also be terminated at any time by any party. That's not a principle of contract law. But that's not what you agree to in the programmatic agreement. The programmatic agreement strictly says that it can be terminated by any party at any time. For a cause. Exactly. And for a cause is found in stipulation number eight. That says that if an impasse should occur, if the parties can't agree as to the implementation... I'm not following something. You're now suggesting that you win because you went on the merits, but I thought your argument to us is that we don't get to the merits. The district court decided the case saying that we don't get to the merits because there's no private right of action, no cause of action under the NHPA. But you're saying we could skip that question and just rule for you, but the only way we could do that is if we found that there was... cause. No, Your Honor, that's the tribe's argument. Why are you arguing to us about there being cause? I'm arguing because the question was presented to me and that's also what the appellant... But you don't want us to touch that issue. It does not need to be touched, Your Honor. It does not. Because there's no private right of action under the National Historic Preservation Act and the programmatic agreement only exists within that realm. But if there is a private right of action, then what do you think should happen in the case? Suppose we disagree with you and we say that there is a private right of action. If there is a private right of action, hypothetically, then this continues to follow the 106 process, which then leads to HIP presenting their comments to the Secretary of Federal Highway and the Federal Department of Transportation providing a final decision, which then follows the APA. That sounds like an argument that there's no private cause of action. There is no private cause of action. I just ask you, suppose we thought there was an implied cause of action to enforce the agreement. If there was an implied private cause of action to enforce the agreement... Are you saying we can then affirm on the ground that there was cause? There was cause under those circumstances. Do you know that's never been passed on by the district court? I would argue that it is waived. However, the question posed, I would say that... It's not waived. The district court never passed on it. The district court can't waive it. The district court just didn't address it. It was raised below the question of whether there was cause. I believe that it was raised, and I would argue that cause has been met under the programmatic agreement under Stipulation 8. But the district court never ruled on that, right? I don't believe so, no. They never reached the question of the contract issue. And one last thing. Sure. Even if there... Am I reading... Do you believe that in Vieux Carre and I forget the other case, finding a cause of action, implied cause of action, those are cases in which the implied cause of action was to enforce a different right than the right they're trying to enforce here, which is bypassing the 106 process altogether rather than trying to enforce a programmatic agreement under 106. I would agree, Your Honor. And those cases were decided prior to the Supreme Court's decision in Sandoval. Just on that, what do you make of the language in the attorney's fees provision that says you can make any civil action to enforce this division? The way that that's written and the way that it's interpreted is for a suit to enforce pursuant to the APA. Doesn't that seem like a strange way to say you're going to enforce this division under a different statute entirely? I don't believe so, Your Honor. Because you're enforcing the rights you have under the APA, not to have it be arbitrary and capricious, et cetera. The National Historic Preservation Act very much is a procedural mandate to federal government agencies, and in this circumstance it follows that procedural mandate. So I believe that it follows very well that it would then be pursuant to the APA and any right of action would have to be pursuant to the APA once the Section 106 process has completed and a final decision is rendered by that federal agency. I'd also like to touch upon the appellant's argument that the programmatic agreement is complete in and of itself. The programmatic agreement by its terms contemplated other documents. It stated that appropriate covenants preserving the properties and their cultural resources in perpetuity would be required. Just the term alone, appropriate, identifies that there had to be further drafting, there had to be further documents as to what specific language would be necessary to effectuate the intent of the programmatic agreement and the intent of the parties. I'd also like to point out that the attorney's fees provision that we were just talking about a few minutes ago, that was not raised before the district court and the state would argue that that argument is now waived. And again, the argument has previously been addressed and rejected by those courts who have found that there is no private right of action pursuant to the NHPA. Thank you. Thank you. Mr. Geary, good morning. May it please the court, my name is Michael Gray. I'm here on behalf of the Federal Highway Administration and the Advisory Council on Historic Preservation. I want to start with the question of whether there's a private right of action. And there's not, clearly not here for three reasons. First, the statutory language is directed at federal agencies. 106 says that the relevant agency shall take into account the effect of the undertaking on any historic property. And the courts have said, where you're directing the language at a federal agency, there's simply no private right of action, there's no need for one, the APA provides a sufficient vehicle. I think that's true whether you have a case like this that is seeking to enforce the terms of a programmatic agreement or whether you have a case like the previous cases where you're seeking to bypass, if there's a claim that the agency's bypassed the NHPA entirely, that's a very traditional APA sort of action. What if it's the state rather than the federal government that bypassed it? So that's the problem that those cases I think are grappling with, which is that you've got some actor that's about to, you know, raise a whole historic burial ground without having done any consultation whatsoever. And the only recourse you're suggesting you have in that situation as a tribe is to bring an APA action against the federal government, which seems like a pretty weak response. Well, unless you have a federal hood, I mean, it's a statute. Correct. That doesn't apply to state action. I think that's why they're putting so much weight on the language in the attorney's fees provision which says, any civil action to enforce this division, which actually sounds like an action to enforce this statute, not another one, there's no other thing you can do to enforce this division against the state. So no matter what Sandoval said, that statute was passed by Congress whenever it was passed. At that time, implied cause of action law was pretty generous, so maybe there's a pretty good argument that says Congress just did contemplate private rights of action, at least against the states. I could see why you'd say not against the federal government. Well, I think it would be a very strange regime for Congress to imply a private right of action against the state in a statute that creates obligations only on the federal government. Now, the obligation on the federal government, because it's only triggered if there's a federal action or federal funding. But don't states have obligations under it? The obligations of the states arise under the regulations, those to consult with the federal government in order to... That's the thing, that would be disregarding. That federal obligation that they have not to avoid consultation. I think that's Sandoval in a nutshell there. If you're creating an obligation or a regulation that the statute doesn't create, you don't get to sue. I think the way around that is to say that we just happen to have here textual language in the statute which seems to contemplate civil actions. No, I don't think so. I think the language enforced this division. Well, that language is general statutory language that's used in fee-shifting provisions. I think the Ninth Circuit had it right to say that all that really does is make someone liable for attorney's fees through EJA. For example, the Equal Access to Justice Act, which applies in an APA-type suit, says it allows fees against the government in any civil action to the same extent that the other party would be liable under the terms of any statute which specifically provides for such an award. So this is a statute that provides for an award. It applies through EJA. No, it says for any suit to enforce this division. You took that language, not an EJA. An APA suit would be a suit to enforce the NHPA. You couldn't bring it against the state. No, you can't bring an APA suit. That's sort of the point. You can't bring an APA suit. I'm not here to argue for the state, but I think that it would be very strange to say that you create Congress intended to imply prior right of action as against a state, and a statute that places the allegations on the federal government. And the regulations take this into account. If the state doesn't follow through with what it agrees to, then we do exactly what we did here. We terminate the provision. We say we're not going to provide any more funding unless you do it. Then we terminated the provision. And then we said, meanwhile, they've raised the barrier. Well, not in this case. We're talking about archaeological resources that may or may not be there. The reason there's a programmatic agreement, not the consultation, is because it would have been very difficult to figure out and expensive to figure out what archaeological resources are actually in the footprint of where the bridge is going. And so they came up with programmatic agreements. In mitigation of this, we're going to acquire these properties and transfer them. And they didn't do it. We said we're not going to fund any more of the bridge. Then we terminated the agreement. And we said we're going to apply the funds we gave you to get the properties against other projects because you didn't use them for the purpose you were supposed to use them. There's nothing else that really the federal government can do. But that's what the NHPA creates is obligations on the federal government. Then we go through the process of subpart B of the regulations because the programmatic agreement isn't there anymore. But it would be very strange, I think, to find that there's any cause of action against the federal government or anybody else in this statute. And I do want to point you on the attorney's fees question to one case that I unfortunately found this weekend. You can't believe the end of your argument, right? Yes, it's the Cousins case from this court, which dealt with the Rehabilitation Act. And I want to provide you the site. It's 880 F. 2nd, 603, 605. And it deals with a very similar statutory provision on attorney's fees and finds that it doesn't create a prior right of action. Thank you. Thank you. Mr. Devereux? Thank you. Very briefly, I would submit in the court that looks at the programmatic agreement, clearly Section 8 has to be read in conjunction with Section 9, which provides a provision that any signatory to this PA may terminate full cause. I'd also like to point out that the NHPA statute was amended in December of 2014, well after Sandoval was decided. So if there was an intent by Congress to either strike that attorney's fees provision or modify it to put in language such that the cause of action is through the APA, they didn't do it. It's not there. And to kind of use Sandoval, which I believe Judge Scalia pointed out was a narrow decision based on the difference between Section 601 and 602 of the Civil Rights Act, the fact is that in Sandoval, Judge Scalia talked about the text. Look at the text. Well, you're still looking at the text of this attorney's fees provision, and it is an expansive provision. So I would submit as far as the money that the federal government says now it's holding back, those are factual determinations as far as I can tell based on just looking at the DOT website. They've already finished the southbound lane. That's been done. Now they expect this summer to start the northbound lane. So all of that's going to take place while we all stand and wait for some sort of advisory commission letter to occur. And at this point, the tribe has to just stand by because the state won't provide the three parcels that they said they would pursuant to the agreement. Thank you. Thank you. Before we break up on this case, am I correct that settlement negotiations are taking place? Everybody can answer. There were, and I'm still more than willing to continue to talk to, I think Judge King was speaking with us. The parties did engage in mediation, but at this point, I believe the mediation has ended. That's my understanding as well. The process under the National Historic Preservation Act continues to attempt to develop other mitigation short of transferring these properties. Okay. I will just end this with a profound statement that, as you all know, settlement is the best quality of justice. Thank you. Thank you.